600 S.E.2d 547

**VENTURE ENGINEERING, INC., Appellant,**

v.

**TISHMAN CONSTRUCTION CORPORATION OF SOUTH CAROLINA; Timberland Properties, Inc.; The South Carolina Public Service Authority (Santee Cooper); and High Point Capital, LLC, Defendants,**

**Of Whom The South Carolina Public Service Authority (Santee Cooper) is the, Respondent.**

**No. 3821.**

Court of Appeals of South Carolina.

Heard Dec. 11, 2003.

Decided June 7, 2004.

Rehearing Denied Aug. 24, 2004.

G. Michael Smith, of Conway; Julio E. Mendoza, Jr., of Columbia; Mark A. Brunty, of Myrtle Beach, for Appellant.

Elizabeth Warner, John Samuel West, both of Moncks Corner; Francis B.B. Knowlton, of Columbia; John Hamilton Smith, of Charleston; for Respondent.

BEATTY, J.

Venture Engineering, Inc. ("Venture") brought a mechanic's lien foreclosure action against Tishman Construction of South Carolina, Timberland Properties, Inc., and the South Carolina Public Service Authority ("Santee Cooper"). Venture appeals the master-in-equity's order finding that Venture's mechanic's lien did not encumber property owned by Santee Cooper. We affirm.

## FACTS/PROCEDURAL HISTORY

In May 1995, Timberland Properties, Inc., ("Timberland") purchased approximately 422 acres of real estate owned by the State of South Carolina but managed by Santee Cooper. As part of the sale, Timberland agreed to develop the land within twelve months of the date of purchase. Subsequently, the parties entered an Amendment to Right to Repurchase granting Timberland a ninety-day extension to begin construction of the proposed development. According to the agreement, if Timberland failed to begin development within the prescribed period, Santee Cooper had the right to repurchase the property together with all improvements for the original sale price. Both the contract and deed, along with the Amendment, were properly recorded in Horry County.

In February 1995, Timberland hired Venture to perform services in connection with Timberland's development of the property. However, Timberland failed to pay for Venture's services and Venture filed a mechanic's lien in the amount of $127,786.74 against the property on May 6, 1997. Around the same time, Timberland failed to comply with the terms of its

agreement with Santee Cooper, prompting Santee Cooper to exercise its right to repurchase the property on May 17, 1997. Venture initiated the present action in circuit court in September 1997, seeking to foreclose on the mechanic's lien filed against the property.

In June 1997, Timberland voluntarily sought Chapter 7 bankruptcy protection. Santee Cooper filed an Adversary Proceeding in bankruptcy court for a declaratory judgment seeking formal adjudication of Santee Cooper's ownership claims in the property and seeking a ruling Timberland had no rights to the property. The bankruptcy trustee counterclaimed, asserting that whatever interests Santee Cooper had came about through fraud and preferential treatment. In essence, the trustee claimed that Timberland's transfer of the property was avoidable and, as trustee, he was invoking his right to avoid the transfer.[1]

In February 1999, the bankruptcy court issued a Notice of Settlement and Sale, advising Timberland's creditors that Timberland's bankruptcy trustee intended to submit a proposed settlement for the bankruptcy court's approval. Among other things, the proposed settlement indicated the trustee would sell the property free and clear of all liens and encumbrances. Additionally, the notice provided that any party objecting to the proposed settlement was to submit a written objection within twenty days, pursuant to Rule 9014, District of South Carolina Bankruptcy Rules. Venture, named as a creditor, received a copy of the notice, but did not file any objection.

The bankruptcy court approved the proposed settlement and sale in April 1999. The property was transferred to WBLC, LLC[2] "free and clear of all liens and encumbrances in accordance with 11 U.S.C. § 363."

Following the conclusion of the bankruptcy proceeding, Venture's foreclosure action was referred to the master-in-

---

1. Trustees have the power to avoid fraudulent or preferential prepetition transfers and obligations. *See* 11 U.S.C. § 548 (Supp.2003).

2. WBLC, LLC was the third party purchaser of the property involved in this matter. After Santee Cooper repurchased the property the property was sold, free and clear of all encumbrances, to WBLC.

equity. The master dismissed Venture's claim with prejudice. The master found as a matter of law that Venture's mechanic's lien could not be enforced, that the bankruptcy court approved the sale of the property, and that Venture's claim was barred by res judicata, waiver and equitable estoppel.

## ISSUES

1. Did the master err when he gave effect to deed language, which should have been void?

2. Did the master err when he allowed a subsequent purchaser to purchase land without regard to a previously filed mechanic's lien?

3. Did the master err in holding that a seller of property, who sells on condition that the buyer develop it, can retake the property without regard to any mechanic's lien for work performed to develop the property?

4. Did the master err in holding that the bankruptcy sale was valid?

## LAW/ANALYSIS

Venture raises four issues for review by this Court; however, we feel that Venture's fourth issue is dispositive of the case. Venture argues the master erred in holding the bankruptcy sale was valid. We disagree. We believe that Venture misapprehends the extent of the bankruptcy court's jurisdiction, as well as the jurisdiction of this court.

Venture does not contest the bankruptcy court's jurisdiction or the validity of the sale of the bankrupt's property; however, Venture argues that the property in question was incorrectly included in the bankrupt's estate. Venture's argument before the master and this court is not efficacious. Venture should have made this argument in the bankruptcy court.

### A. The Bankruptcy Case

■ A bankruptcy estate is comprised of all legal or equitable interests of a debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1) (1988). The trustee's assertion of his right to avoid the alleged fraudulent or preferential transfer to Santee Cooper resulted in the estate

retaining an equitable interest in the property. A transferee may have colorable title to the property, but the equitable interest—at least as far as the creditors (but not the debtor) are concerned—is considered to remain in the debtor so that creditors may attach or execute judgment on the property as though the debtor had never transferred it. *In re Mortgageamerica Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983).[3] "[W]hen such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a legal or equitable interest in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code." *Id.* Accordingly, the bankruptcy court had jurisdiction.

■ During the bankruptcy proceeding, Venture was a named creditor and received proper notice of the settlement and request to sell the property free and clear of all liens.[4] Venture failed to take the necessary action to protect its lien against the property.[5] The specific question before the bankruptcy court was whether the trustee and the debtor had rights in the property in question. The bankruptcy court allowed the parties to resolve the dispute by settlement. The settlement required the trustee to convey, by quit claim deed, his interest in the property to Santee Cooper and for Santee Cooper to sell the property to a third party. The trustee would receive $2,000,000.00. The bankruptcy court approved

---

3. *See also In re Criswell*, 102 F.3d 1411, 1416 (5th Cir.1997) (stating property of the debtor is property of the estate upon filing of the bankruptcy petition); *but see In re Saunders*, 101 B.R. 303 (Bkrtcy. N.D.Fla.1989) (finding until there is a judicial determination that property has been fraudulently transferred, the property is not included in the bankrupt's estate).

4. The moving party must serve any interested party with notice and must simultaneously transmit to the clerk of court for filing (1) the motion; (2) the notice of hearing of the motion; and (3) a proposed order. *See* SC CI 9014–2(b).

5. Any response, return and/or objection to the special motion must be served no later than twenty (20) days following the service date of the motion. If the objection time expires without the filing of a response, return and/or objection or other request, the proposed order will be promptly submitted to the judge for his consideration. *See* SC CI 9014–2(c).

the sale free and clear of all liens and encumbrances in accordance with 11 U.S.C. § 363.

The bankruptcy court found that the settlement was a "global resolution" of the adversary proceeding and that the manner in which the settlement was structured necessitated the bankruptcy court's acceptance or rejection of the entire transaction, including the sale of the property to WBLC. Even though two creditors objected to the settlement, the bankruptcy court overruled the objections and approved the settlement. The proposed settlement involved the issue of ownership of the property. If there was a question concerning the property's ownership, the bankruptcy court was the proper forum to address those issues.

Moreover, Venture's failure to seek a stay of the sale renders the question of whether the land was property of the bankrupt's estate moot. *See In re Sax,* 796 F.2d 994, 996 (7th Cir.1986) (reasoning that if the property in question was not a part of the bankrupt's estate, appeal from order approving its sale was rendered moot for failure of the lien holder to obtain a stay of sale, even though sale was improper); *see also In re Vetter,* 724 F.2d 52, 55 (7th Cir.1983); 11 U.S.C § 363(m) (1988).

## B.  The Master–In–Equity Case

▮▮▮     The master found, and we agree, Venture is bound by the doctrine of res judicata.  "The doctrine of res judicata provides that final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *In re S.N.A. Nut Co.,* 215 B.R. 1004, 1008 (1997); *see also Plum Creek Dev. Co., Inc. v. City of Conway,* 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999) ("Under the doctrine of res judicata, '[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit.' ").  "To establish res judicata, the defendant must prove the following three elements:  (1) identity of the parties;  (2) identity of the subject matter;  and (3) adjudication of the issue in the former suit." *Id.*

▮▮▮     "Bankruptcy proceedings are *in rem.*  All persons concerned, including creditors, are deemed to be parties to the

[bankruptcy] proceedings." *Miller v. R.K.A. Mgmt. Corp.*, 99 Cal.App.3d 460, 160 Cal.Rptr. 164, 169 (1979) (internal citations omitted). As one of Timberland's creditors, Venture was deemed to be a party in the bankruptcy action. The property was the subject matter in issue in both proceedings. The bankruptcy court ruled on the property issue, finally resolving all issues of ownership.

In bankruptcy matters, orders approving the sale of a debtor's property are considered final decisions and are immediately appealable. *In re Sax*, 796 F.2d at 996. This matter was resolved when the bankruptcy court ordered the sale of the property free and clear of any liens and encumbrances.[6] Venture could have sought a stay of sale and immediately appealed to the federal court; however, Venture failed to do so. The doctrine of res judicata bars any subsequent action on Venture's behalf.

■   When a bankruptcy court's order is erroneous, it is correctable only through the federal court and, under the circumstances, the trial court and this court are required to accept the bankruptcy court's order as it was rendered and entered. *See Fowler v. Fowler*, 474 So.2d 719, 720 (Ala.Civ. App.1985); *see also In re Atlanta Retail, Inc.*, 294 B.R. 186, 195 (Bkrtcy.N.D.Ga.2003) ("Orders of courts having jurisdiction to enter them must be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, . . . but it may not be made collaterally."). Moreover, this Court is unable to render an opinion on the merits of Venture's claims because the master concluded that Venture's claim was barred by res judicata, waiver, and equitable estoppel. Venture did not appeal the master's decision on these grounds.

---

**6.** A sale free and clear of liens and encumbrances pursuant to 11 U.S.C. § 363 is a protected sale. *See Matter of Met–L–Wood Corp.*, 861 F.2d 1012, 1017 (7th Cir.1988) ("A proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding."); *see also Int'l Union, Etc. v. Morse Tool, Inc.*, 85 B.R. 666 (D.Mass.1988) (finding that the protection of good-faith purchasers under 11 U.S.C. § 363 reflects a salutary policy of not only affording finality to judgments of the bankruptcy court, but particularly of giving finality to those orders and judgments upon which third parties rely).

## CONCLUSION

For the forgoing reasons, the decision of the Master is **AFFIRMED.**

HEARN, C.J., and CURETON, A.J., concur.