MOORE, Judge.
The State Department of Revenue ("the Department") has petitioned this court to issue a writ of mandamus directing the Montgomery Circuit Court ("the circuit court") to grant its motion to dismiss. We deny the petition.
Procedural History
AT & T Mobility, LLC, operates in Alabama through its affiliates, Decatur RSA LP and AT & T Mobility II, LLC. We hereinafter refer to AT & T Mobility, LLC, Decatur RSA LP, and AT & T Mobility II, LLC, collectively as "AT & T." AT & T sells "internet access, voice, and text messaging services to Alabama customers." Although the Internet Tax Freedom Act, 47 U.S.C. § 151, prohibits states from taxing Internet-access charges, AT & T collected a service tax on Internet-access charges ("the Internet tax") from its Alabama customers and remitted the tax to the Department.
In 2009 and 2010, AT & T customers nationwide filed multiple class-action lawsuits in various federal courts against AT & T, alleging that AT & T had violated the Internet Tax Freedom Act by collecting taxes on Internet-access charges. The class representatives from Alabama were Stephanie Diethelm, Ann Marie Ruggerio, James Marc Ruggerio, and Joseph Phillips ("the Alabama AT & T customers"); they asserted that the class consisted of "all individuals who contracted with AT & T to provide wireless internet access through an AT & T system smart phone or an AT & T datacard who were charged purported sales 'taxes' for internet access." The federal cases were consolidated and transferred to the United States District Court for the Northern District of Illinois. In June 2010, the parties involved in the federal litigation entered into a "Global Class Action Settlement Agreement," which provided that AT & T would no longer collect tax on Internet-access charges; the class members authorized AT & T "to petition the various taxing jurisdictions on their behalf to obtain refunds of the tax erroneously collected on internet access charges and remitted to those jurisdictions."
Pursuant to the settlement, Decatur RSA LP ("Decatur") and AT & T Mobility II, LLC, submitted to the Department petitions for refunds on behalf of the Alabama AT & T customers, seeking to recover the tax that had been improperly collected by AT & T on its customers' Internet-access charges. The Department denied the refund petitions, and Decatur *381 and AT & T Mobility II subsequently appealed the denial of the petitions to the Department's administrative-law division, and that appeal was ultimately heard by the recently created Alabama Tax Tribunal. See Ala.Code 1975 § 40-2B-2(a) (creating the tax tribunal to "to resolve disputes between the Department ... and taxpayers"). On May 6, 2015, the tax tribunal entered an order directing the Department to issue the requested refunds. On June 5, 2015, the Department filed an appeal of the tax tribunal's order to the circuit court.
On April 1, 2016, the Department filed in the circuit court a motion to dismiss its appeal for lack of subject-matter jurisdiction. The Department asserted that the Alabama AT & T customers had failed to comply with the notice and cure provisions of Ala.Code 1975, § 40-21-121(k). The Department argued that, based on that failure, the Alabama AT & T customers had not invoked the jurisdiction of the tax tribunal, thereby rendering its order directing the Department to issue the refunds void. Because an appeal will not lie from a void order, the Department contended that the circuit court lacked jurisdiction to consider the merits of the Department's appeal. On May 17, 2016, the circuit court denied the motion to dismiss. The Department filed its petition for a writ of mandamus on June 28, 2016. In its petition, the Department requests that this court issue an order requiring the circuit court to dismiss its appeal for lack of subject-matter jurisdiction.
Discussion
Section 40-21-121(k) provides:
"If a customer believes that an amount of tax, charge, or fee or an assignment of place of primary use or taxing jurisdiction included on a billing is erroneous, the customer shall notify the home service provider in writing. The customer shall include in this written notification the street address for the customer's place of primary use, the account name and number for which a customer seeks a correction, a description of the error asserted by the customer, and any other information that the home service provider reasonably requires to process the request. Within 60 days of receiving a notice under this section, the home service provider shall review its records to determine the customer's taxing jurisdiction. If this review shows that the amount of tax, charge, or fee or assignment of place of primary use or taxing jurisdiction is in error, the home service provider shall correct the error and refund or credit the amount of tax, charge, or fee erroneously collected from the customer for a period of up to two years. If this review shows that the amount of tax, charge, or fee or assignment of place of primary use or taxing jurisdiction is correct, the home service provider shall provide a written explanation to the customer. The procedures in this section shall be the first course of remedy available to customers seeking correction of assignment of place of primary use or taxing jurisdiction, or a refund of or other compensation for taxes, charges, and/or fees erroneously collected by the home service provider, and no cause of action based upon a dispute arising from such taxes, charges, or fees shall accrue until a customer has reasonably exercised the rights and procedures set forth in this section."
By its plain language, see IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344, 346 (Ala.1992) ("Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning."), § 40-21-121(k) provides that a customer who claims that he or she has been erroneously charged a tax must notify *382 his or her home-service provider in writing of the alleged error. Within 60 days, the home-service provider must review its records and determine whether an error has been committed. If the home-service provider determines that it erroneously collected a tax, the home-service provider must correct the error to prevent further collection and must refund the tax collected for up to two years. No cause of action against the home-service provider for a refund or any other compensation accrues until a customer "has reasonably exercised" the foregoing procedure.
The materials before us indicate that the Alabama AT & T customers did not follow the procedure set out in § 40-21-121(k) before filing their class action against AT & T. Based on that fact, the Department argues that the Alabama AT & T customers could not claim a refund for the Internet tax that AT & T had erroneously collected from them and, therefore, Decatur and AT & T Mobility II could not petition for a refund on their behalf. We disagree.
The Alabama Legislature amended § 40-21-121 in 2001 by, among other things, adding subsection (k) in response to the passage of the federal Mobile Telecommunications Sourcing Act ("the federal MTSA"), 4 U.S.C. § 116 et seq.See Title to Act No. 2001-1090, Ala. Acts 2001. The federal MTSA addresses the problem encountered by mobile-telecommunications providers in determining which state and local taxes they should collect by "creating uniform methods of 'sourcing,' which is the process of determining where a transaction is taxable." T-Mobile South, LLC v. Bonet, 85 So.3d 963, 981 (Ala.2011). Although the federal MTSA does not contain notice and cure provisions, Alabama elected to join other jurisdictions in providing mobile-telecommunications providers who collect taxes on behalf of the state additional protection from lawsuits arising from their tax-collecting function, which can be complicated. See, e.g., Alaska Stat. § 29.45.750(c) ; Ariz.Rev.Stat. § 42-5034.01 ; Ark.Code Ann. § 26-52-315(c)(2)(A) ; Colo.Rev.Stat. § 29-1-1002(3) ; Del.Code. Ann. tit. 30, § 5508(b) ; D.C.Code § 47-3922(e) ; Ga.Code Ann. § 48-8-13(c) ; Ky.Rev.Stat. Ann. § 65.7640 ; Mont.Code Ann. § 15-53-131(4) ; N.H.Rev.Stat. Ann. § 82-A:4-b(V) ; Okla. Stat. tit. 68, § 55001(D)(7) ; Tenn.Code Ann. § 67-6-532(c)(1) ; and Wyo. Stat. Ann. § 39-15-109(g). In adopting this measure, the Alabama Legislature intended that consumers could not maintain a civil action against a "home service provider" based on an erroneous tax collection before first notifying the provider of the error and giving the provider an opportunity to timely cure the error. See Miller v. Sprint Spectrum L.P. (No. C07-59JLR, Dec. 6, 2007) (W.D.Wash.2007) (not reported in F.Supp.2d) (construing Wash. Rev.Code § 35.21.873 ).
Section 40-21-121(k) does create certain procedures that a consumer must follow before obtaining a tax refund directly from a home-service provider, but it does not provide that a failure to follow those procedures acts as a forfeiture of the consumer's rights to a tax refund from the Department. Section 40-21-121(k) does not even refer to tax-refund claims against the Department or establish any procedures that must be followed before a petition for a tax refund can be filed against the Department. Those procedures are contained exclusively in the Taxpayers' Bill of Rights and Uniform Procedures Act ("the TBOR"), Ala.Code 1975, § 40-2A-1 et seq. The Department has not cited a single provision of the TBOR that requires compliance with § 40-21-121(k) before a tax-refund petition can be filed by or on *383 behalf of a consumer from whom a home-service provider has erroneously collected taxes.
Moreover, even if § 40-21-121(k) could be construed as requiring a consumer to follow the notice and cure provisions before filing a tax-refund petition against the Department, which we do not hold, the Department has not demonstrated that those provisions are jurisdictional in nature. "Subject-matter jurisdiction concerns a court's power to decide certain types of cases." Ex parte Seymour, 946 So.2d 536, 538 (Ala.2006). Section 40-2B-2(g)(1), Ala.Code 1975, gives the tax tribunal jurisdiction over appeals from the denial of a petition for a tax refund. The Department has not explained how noncompliance with § 40-21-121(k), which the Department considers to be a bar to the Alabama AT & T customers' substantive right to a tax refund, deprived the tax tribunal of jurisdiction to decide Decatur and AT & T Mobility II's appeal. See Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31, 46 (Ala.2013) (explaining difference between issues affecting a party's cause of action and issues implicating a party's standing and the court's subject-matter jurisdiction).
Mandamus is an extraordinary remedy and should not be granted unless the petitioner's right to relief is clear. Ex parte Army Aviation Ctr. Fed. Credit Union, 477 So.2d 379 (Ala.1985). The Department has not shown that the tax tribunal lacked subject-matter jurisdiction to adjudicate the appeal filed by Decatur and AT & T Mobility II from the denial of the tax-refund petition filed on behalf of the Alabama AT & T customers. The tax tribunal issued a valid order from which an appeal would lie to the circuit court. See § 40-2B-2(m), Ala.Code 1975. The circuit court did not err in denying the Department's motion to dismiss.
PETITION DENIED.
THOMAS and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.
PITTMAN, J., recuses himself.
On Application for Rehearing
As set out in our opinion on original submission, several customers of AT & T Mobility, LLC, residing in Alabama filed a class-action lawsuit against AT & T Mobility, LLC, and its Alabama affiliates, Decatur RSA LP and AT & T Mobility II, LLC, based on the companies' unlawful collection of a service tax on Internet-access charges ("the Internet tax");[1] as in our opinion issued on original submission, we sometimes refer to AT & T Mobility, LLC, Decatur RSA LP, and AT & T Mobility II, LLC, collectively as "AT & T." That class action was transferred to the United States District Court for the Northern District of Illinois ("the federal court") and consolidated with other similar cases. The parties subsequently entered into a "Global Class Action Settlement," approved by the federal court, in which the class members, including the class members residing in Alabama, authorized AT & T Mobility, LLC, "to petition the various taxing jurisdictions on their behalf to obtain refunds of the tax erroneously collected on internet access charges and remitted to those jurisdictions." The settlement further provided:
"The Settlement Class hereby consents to AT&T Mobility's filing of the claims *384 for refund of Internet Taxes contemplated by this Settlement Agreement and to the payment of refunds or issuance of tax credits to AT&T Mobility in accordance with the terms of the Settlement Agreement.... To the extent required by the law of any state or local jurisdiction at issue, the Settlement Class assigns AT&T Mobility all rights of the Settlement Class members to file the refund claims for Internet Taxes contemplated by this Settlement Agreement."
On November 3, 2010, Margaret C. Wilson, an attorney representing AT & T Mobility, LLC, submitted a letter to the State Department of Revenue ("the Department") attaching two separate documents entitled "Joint Petition for Refund," one in the name of Decatur RSA LP and the other in the name of AT & T Mobility II, LLC. In the letter, Wilson explains:
"This refund claim is filed on behalf of the specific AT&T Mobility affiliate that remitted the tax, as identified on the enclosed refund claim form, and is joined in by the customers from whom tax amounts were collected, to the extent and as explained in the enclosed statement in support."
The "Statement in Support of Claim for Refund of Tax Attributable to Amounts Paid for Internet Access" explains that AT & T was filing the joint refund petitions pursuant to the terms of the class-action settlement, asserting that "[t]he Settlement Class has ... expressly joined in the making of the Refund Claim, as contemplated under the Settlement Agreement." Wilson also included in the documentation sent to the Department a digital versatile disc containing the names of all the class members from whom AT & T had collected the Internet tax; however, none of those class members actually signed either refund petition. Additionally, the joint refund petition filed by AT & T Mobility II, LLC, states on the line intended to identify the consumer joining in the petition: "Joinder is per Global Settlement Agreement referenced in the State of Support of refund claim."
On application for rehearing, the Department argues, for the first time, that the refund petitions did not comply with Ala. Code 1975, § 40-2A-7(c)(1), a part of the Alabama Taxpayers' Bill of Rights and Uniform Revenue Procedures Act ("the TBOR"), Ala. Code 1975, § 40-2A-1 et seq., which provides, in pertinent part:
"In the case of a petition for refund of ... public utilities taxes pursuant to Chapter 21 ... the petition shall be filed jointly by the taxpayer who collected and paid over the tax to the department and the consumer/purchaser who paid the tax to the taxpayer."
The Department maintains that AT & T did not have the authority to file a refund petition on behalf of the class members because, it says, (1) Ala. Code 1975, § 40-2A-7(c)(1), does not give the taxpayer who collected and paid a public-utilities tax the authority to file a refund claim on behalf of a consumer/purchaser and (2) even if § 40-2A-7(c)(1) does allow such a procedure, the class-action settlement purporting to give AT & T the authority to file on behalf of the class members is void.
Ordinarily, this court cannot consider arguments in support of a petition for a writ of mandamus asserted for the first time in an application for rehearing. See Ex parte Lovejoy, 790 So.2d 933, 938-39 (Ala.2000). However, the Department contends that strict compliance with § 40-2A-7(c)(1) is necessary and jurisdictional, see generally Patterson v. Gladwin Corp., 835 So.2d 137, 153 (Ala.2002) ("The TBOR is jurisdictional on its face."), and that it may raise a jurisdictional argument for the first time in an application for rehearing.
*385 Although we question that latter proposition, see, e.g., Jefferson Cty. Comm'n v. ECO Preservation Servs., 788 So.2d 121, 127 (Ala.2000) (declining to consider jurisdictional argument raised for the first time on application for rehearing); but see Ex parte State (Hardeman v. State), 202 Ala. 694, 81 So. 656 (1919) (holding that issue of jurisdiction could be raised for the first time on application for rehearing), we address the merits of the Department's argument.
Compliance with § 40-2A-7(c)(1)
AT & T erroneously collected the Internet tax based on Ala. Code 1975, § 40-21-121(a), which levies a tax on the proceeds of the sale of mobile-telecommunications services. Alabama Code 1975, § 40-21-121(b), provides, in part, that "[a]ll taxes paid in pursuance of this section shall be conclusively presumed to be a direct tax on the customer precollected for the purpose of convenience and facility only." Under § 40-21-121, AT & T is considered the "taxpayer" because it is required to collect the tax and remit the tax to the Department, see Ala. Code 1975, § 40-2A-3(24), but it is actually AT & T's consumers who pay the tax.
Section 40-2A-7(c)(1) generally provides that any petition for a refund of a tax paid pursuant to § 40-21-121"shall be filed jointly" by the taxpayer and the consumer/purchaser. However, as an exception to the general rule, "[a] direct petition may be filed by the taxpayer if the taxpayer never collected the tax from the consumer/purchaser, or if the tax has been credited or repaid to the consumer/purchaser by the taxpayer." § 40-2A-7(c)(1). By this statutory scheme, the legislature apparently intended that a joint petition should be filed in those cases in which the taxpayer seeks a refund of moneys actually paid by the consumer. That procedure ensures that the consumer knows of the refund claim, that the consumer consents to petitioning the Department for a refund of his or her money, and that the consumer ultimately receives any refund remitted to the taxpayer.[2] The filing provisions of the TBOR should be construed liberally with that legislative intention in mind. See Ala. Code 1975, § 40-2A-2(1) a. (providing that the purpose of the TBOR is "to provide equitable and uniform procedures for the operation of the department and for all taxpayers when dealing with the department" and that the TBOR "shall be liberally construed to allow substantial justice").
Generally speaking, a petition for a refund is "filed" when it is properly mailed or otherwise delivered to the Department. See Ala. Code 1975, § 40-1-45. A refund petition is "jointly" filed when both the taxpayer and the consumer combine or unite in delivering the petition as required. See Black's Law Dictionary 965 (10th ed. 2014) (defining "joint"); see also Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So.2d 513, 517 (Ala.2003) ("[W]hen a term is not defined in a statute, the commonly accepted definition of the term should be applied."). Liberally construing § 40-2A-7(c)(1), we hold that a consumer may effectively "join" in a refund petition by expressly authorizing the taxpayer to include the consumer as a joint petitioner and by appointing the taxpayer as his or her agent for that purpose. In reaching our conclusion, we note that the Department indicated in oral argument that a party with a valid power of attorney *386 may file a refund petition on behalf of another person. A power of attorney creates an agency relationship by which the attorney-in-fact covenants to use the powers conferred for the sole benefit of the principal. See Smith v. Wachovia Bank, N.A., 33 So.3d 1191, 1200 (Ala.2009). If a consumer expressly authorizes a taxpayer to file and collect an Internet-tax refund on behalf of the consumer, the taxpayer, in pursuing the refund solely for the ultimate benefit of the consumer, acts as an agent for the consumer in the same manner as an attorney-in-fact. Therefore, the taxpayer with valid authorization may, as part of its agency, lawfully include the consumer in a joint refund petition.
We also find that nothing in the language of § 40-2A-7(c)(1) prevents a taxpayer from including multiple consumers in a single refund petition. In Patterson, 835 So.2d at 142, the supreme court held that taxpayers could not circumvent the TBOR by filing a direct class action against the state to collect a tax refund. However, Patterson does not address whether multiple consumers may file a joint tax-refund petition along with a single taxpayer under § 40-2A-7(c)(1). Section 40-2A-7(c)(1) provides only that any consumer seeking a refund shall jointly file his or her petition with the taxpayer. The statute does not specify that only one consumer may join in a petition. Section 40-2A-7(c)(1) should not be construed to require that a separate refund petition be filed for each and every one of the hundreds of thousands of class members, thereby unduly increasing the administrative burden on the consumers, the taxpayers, and the Department in violation of the legislative intent behind the TBOR.
Finally, we reject any argument that the administrative-refund process was not properly invoked because the joint refund petitions were not signed by each individual class member. Although Rule 810-14-1-.18, Ala. Admin. Code (Dep't of Revenue), provides that the consumer must sign a joint refund petition, and the joint refund petition itself contains a signature line for the consumer, nothing in the TBOR indicates that a failure to sign a refund petition renders that petition invalid. Section 40-2A-7(c)(1) requires only that the joint refund petition be "filed" within the time limits prescribed in the TBOR. The materials before this court show that the documentation AT & T provided to the Department identified each class member by name and address, informed the Department of the amount of the tax collected from each class member, and calculated the total amount of the refund claimed. AT & T substantially complied with the filing requirement set out in the TBOR; the Department has failed to show that the technical omission of the signatures of the individual class members constitutes a jurisdictional defect. Compare Ex parte Taylor, 157 So.3d 122 (Ala.2008) (holding that a signature is not a jurisdictional requirement for a notice of appeal); and Smith v. State, 918 So.2d 141 (Ala.Crim.App.2005) (holding that lack of proper verification of petition for postconviction relief was not a jurisdictional defect, but a procedural defect only) with Ex parte Carlisle, 894 So.2d 721 (Ala.Civ.App.2004) (holding that failure of taxpayer to file notice of appeal with the Department's Administrative Law Division within 30 days of entry of final order as required by Ala. Code 1975, former § 40-2A-9(g)(1), deprived circuit court of appellate jurisdiction).
In summary, we conclude that § 40-2A-7(c)(1) allows a taxpayer with valid express authority conferred by multiple consumers to include those consumers in joint refund petitions and that the failure of the consumers to each sign the joint *387 refund petitions does not render the refund petitions invalid.
Validity of Authorization
The class members authorized AT & T to petition for the Internet-tax refund in the class-action settlement approved by the federal court. The Department argues that the federal court lacked subject-matter jurisdiction to approve the settlement agreement, thereby rendering the settlement agreement void. We disagree.
The TBOR constitutes the exclusive means for obtaining a tax refund. Patterson, supra. A federal court does not have subject-matter jurisdiction over state tax-refund claims for which the state has provided the exclusive remedy. See Estler v. Dunkin' Brands, Inc., (Ms. 16 Civ. 932(LGS), Oct. 3, 2016) (not reported in F.Supp.) (S.D.N.Y.2016). The parties did not provide this court with all the pleadings and orders from the federal-court action; however, those materials that we do have indicate that the federal court did not attempt to adjudicate the questions whether AT & T had violated Alabama law by collecting the Internet tax or whether the Alabama class members were entitled to a tax refund under Alabama law. See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig., 789 F.Supp.2d 935, 983 (N.D.Ill.2011). Thus, we conclude that the federal court did not act outside its jurisdiction in that manner.
We also conclude that the federal court did not lack subject-matter jurisdiction as a result of the failure of the Alabama class members to comply with Ala. Code 1975, § 40-21-121(k). Section 40-21-121(k) provides that no cause of action under Alabama law shall accrue to a customer of a telecommunications-service provider unless and until the customer complies with the notice and cure provisions contained in that Code section. However, as noted in our opinion on original submission, 247 So. 3d at 383, the fact that a party does not have a valid cause of action does not affect a court's subject-matter jurisdiction. Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31, 46 (Ala.2013).[3] A federal court's judgment cannot be attacked unless there is a proven absence of subject-matter jurisdiction or jurisdiction of the parties. See Jemison v. Brantley, 281 Ala. 108, 199 So.2d 650 (1967). Generally, a failure to meet prerequisites, such as meeting the requirements of a notice and cure provision, does not affect subject-matter jurisdiction and such failure will render the resulting judgment not void but merely voidable and not subject to collateral attack. See, e.g., Postma v. First Fed. Savings & Loan Ass'n of Sioux City, Iowa, note 12 (No. C 93-4058, March 28, 1995), (N.D.Iowa 1995) (not reported in F. Supp.), aff'd, 74 F.3d 160 (8th Cir. 1996) ("[A]lthough Defendants complied with the technical requirements of Iowa's mediation provision, Iowa Code § 654A.6, and the notice of right to cure, Iowa Code § 654.2A and 654.2B, failure to comply with these provisions does not render a judgment subsequently obtained void, but merely voidable. A judgment which is merely voidable is not open to collateral attack."). The Department does not cite any authority to the contrary.
The Department next argues that the federal court lacked jurisdiction to approve the provision of the settlement agreement authorizing AT & T to pursue the refund claims on behalf of the class. The Department *388 cites Assignees of Best Buy v. Combs, 395 S.W.3d 847 (Tex.App.2013), to support its jurisdictional argument. In Combs, taxpayers, acting as a class, filed lawsuits against Best Buy and two other retailers to recover a refund of the overpayment of Texas sales taxes. The trial courts approved settlements pursuant to which the retailers assigned their refund claims to the class so that individual class members could pursue their assigned refund claims against the Texas State Comptroller. The orders approving the settlements purported to appoint class counsel to represent each individual class member on their refund claims against the Texas State Comptroller. Class counsel filed the refund claims, which were denied, prompting a lawsuit against the Texas State Comptroller. The trial court dismissed the lawsuit for lack of jurisdiction. On appeal, a Texas Court of Appeals determined that the trial courts overseeing the class actions had lacked jurisdiction to appoint class counsel as the legal representatives of the class members in their separate refund proceedings. In reaching that conclusion, the court held that a litigant ordinarily has the right to choose his or her own counsel and that courts do not have the authority to appoint counsel for a litigant absent express statutory or procedural authorization. 395 S.W.3d at 852. The court determined that Rule 42(g), Tex. R. Civ. P., specifically requires a trial court to appoint counsel in a class action, but held that Rule 42(g) does not imply a power to also appoint counsel in tax-refund proceedings prosecuted by the individual class members. 395 S.W.3d at 854-68. The court found that the appointed class counsel lacked authority to file any tax-refund petitions on behalf of the individual class members who, as a result, had failed to exhaust their administrative remedies before filing a tax-refund lawsuit against the Texas State Comptroller. The court affirmed the order of the Texas trial court dismissing the lawsuit for lack of jurisdiction. 395 S.W.3d at 868.
Unlike in Combs, this case does not concern the power of a state court to appoint class counsel to pursue tax-refund claims for class members. This case concerns the power of a federal court to approve a settlement in which a class of consumers voluntarily authorizes a taxpayer to file joint tax-refund petitions on behalf of the class members. The Department has not cited any legal authority that prevents a federal court from approving an agreement of that nature.
The Department last contends that the federal-court judgment approving the settlement is void because it was entered in a manner inconsistent with the Department's right to due process. See generally Ex parte Full Circle Distrib., L.L.C., 883 So.2d 638 (Ala.2003). However, the Department does not have any constitutional right to due process. See Limestone Cty. Dep't of Human Res. v. Long, 182 So.3d 541, 545 (Ala.Civ.App.2014). Even if it did, the Department has not identified any of its rights that were at stake in the federal action, much less explained how those rights were adversely affected in any unconstitutional manner. The federal court's judgment approving the class-action settlement agreement authorizes AT & T to pursue a refund of the Internet tax from the Department. The judgment does not purport to determine any of the substantive or procedural rights of AT & T, the Alabama class members, or the Department in regard to the refund claims under Alabama tax law. As the federal court explained:
"A recurring concern involves the perception that the Court, in approving the Agreement, is affirmatively holding that the relevant taxing jurisdictions must grant the parties' refund requests. The *389 Court makes no such finding. The Settlement is an agreement that, once approved by this Opinion, will only bind the private parties that are privy to it. The Settlement does not purport to dictate to any state or local authority the makeup of its applicable law."
In re AT & T Mobility Wireless Data Servs. Sales Tax Litig., 789 F.Supp.2d at 983.
For the foregoing reasons, we conclude that the federal court had jurisdiction to approve the settlement agreement, including the tax-refund-filing authorization provision.
Conclusion
The undisputed facts of this case show that the Alabama class members, with knowledge of their rights to a refund of the Internet tax, expressly conferred upon AT & T the power to file refund petitions on their behalf based on the class-action settlement agreement that was validly approved by the federal court. Acting pursuant to that authority, AT & T filed two joint refund petitions that effectively included the Alabama class members, notwithstanding their vast number and the lack of their signatures on the petitions. The terms of the settlement agreement indicate that AT & T shall place in escrow for the benefit of the Alabama class members any tax refunds recovered from the Department. Thus, it is clear that AT & T performed the administrative function of filing the joint refund petitions for the ultimate financial benefit of the Alabama class members. Under these circumstances, we find that the joint refund petitions satisfy the purposes of § 40-2A-7(c)(1) of the TBOR.
The filing of the joint refund petitions invoked the administrative-refund process, which was properly followed by an administrative appeal that resulted in a final order of the Alabama Tax Tribunal. The Department timely appealed to the circuit court, which has subject-matter jurisdiction as explained in our opinion on original submission. 247 So. 3d at 383. Accordingly, the circuit court did not err in denying the Department's motion to dismiss the appeal for lack of subject-matter jurisdiction.
APPLICATION OVERRULED.
Thompson, P.J., and Pittman,* Thomas, and Donaldson, JJ., concur.

The Alabama class-action complaint originally named Stephanie Diethelm as a plaintiff and class representative, but she later withdrew from the class action, a fact overlooked in our opinion issued on original submission. 247 So. 3d at 380.

Section 40-2A-7(C)(4), Ala. Code 1975, provides, in part, that if a refund petition is granted, the "overpayment shall ... be refunded to the taxpayer." (Emphasis added.) We presume that the legislature intended that the consumer/purchaser join in the tax-refund petition in part to secure his or her right to receive the refund from the taxpayer.

Moreover, the Department has not proven that the Alabama class representatives lacked a valid federal cause of action against AT & T over which the federal court would obviously have had jurisdiction.

Judge Pittman had recused himself from this case when this court issued its opinion on original submission. However, because of circumstances arising after this court's opinion on original submission was issued, the basis for Judge Pittman's recusal no longer exists.